Richard Thomas Thigpen,

on behalf of himself

195 Madrid Avenue,

Moriarty, New Mexico

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 0 1 2024

MITCHELL R. ELFERS
CLERK

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

---

Richard Thomas Thigpen,

Plaintiff,

v.

Ian Anderson, CEO

Westlake Services, LLC

Defendant,

Case # **24 CV 214 SCY**


CIVIL RIGHTS COMPLAINT

PURSUANT TO 42 U.S.C.§1983


## COMPLAINT

Plaintiff, Richard Thomas Thigpen ("Plaintiff"), individually make the following allegations:

### JURISDICTION

#### PARTIES AND PERSONAL JURISDICTION

1. Plaintiff is a natural person who resides in New Mexico and is authorized by law to bring this action.

2. Defendant, Ian Anderson most senior executive of Westlake Services, LLC, a.k.a. Westlake Financial, ("Westlake"), a financial company that specializes in servicing car loans in the state of New Mexico and throughout the United States of America, including loans within this District. Westlake has its headquarters at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010. According to their website, Westlake has Over 400 Dealer Account Managers in all 50 States and Westlake finances contracts through a network of over 50,000 new and used car dealerships throughout the United States including in New Mexico. Other publicly available data indicates that Westlake has additional branches in additional states.

3. In the course of its business, Defendant accepted an application for an extension of credit (loan) from Plaintiff, a New Mexico resident. Defendant then approved the extension of credit with a contract. This loan contract and Westlake are subject to Federal and State laws as well as contract laws and the United States of America Constitution. This loan contract is also subject to the Consumer Protection Laws and the Truth in Lending Act. Such conduct forms the basis of this Complaint.

4. Westlake maintains its only place of business within the United States at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010 and may be served upon any authorised agent or officer at such business.

5. Defendant is subject to the jurisdiction of this court.

6. Westlake does not maintain a place of business in New Mexico.

7. Westlake does not keep its assets in New Mexico.

8. All conditions precedent to this action have been complied with.

## SUBJECT MATTER JURISDICTION

**Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3), 42U.S.C. §1983.**

9.  In enacting the TILA, "The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms… and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing…" TILA, 88 Stat. 1511, note to 15 U.S. Code § 1601 - Congressional findings and declaration of purpose.

10.  TILA 15 U.S. Code § 1605 requires creditors to provide the amount of the finance charge in connection with any consumer credit transaction and shall be determined as the sum of all charges.

11.  For these reasons and those articulated in the facts below, Plaintiff has suffered concrete and particularised injuries that are fairly traceable to Westlake's conduct. Such injuries may be redressed in the form of damages and equitable relief as sought herein.

12. 15 U.S. Code 1602 Truth in Lending Act, Plaintiff has a right to credit.

13.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's Truth in Lending Act claim because it arises under federal law, 15 U.S.C. § 1601 et seq.

14. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over

Plaintiff's Fair Debt Collection Practices Act claim because it arises under federal law, 15 U.S.C.

§ 1692 et seq.

15. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over

Plaintiff's Telephone Consumer Protection Act of 1991 (TCPA) claim.

16. Further, this Court has jurisdiction over this matter under 28 U.S.C. § 1331, 1332,

1367.

17. This Court has personal jurisdiction over Defendant pursuant to FRCP 4(k)(1)(a) and

HRS § 634–35. In addition, this court may exercise supplemental jurisdiction over the state law

claims because the state and federal claims derive from a common nucleus of operative facts so

that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. See 28

U.S.C. § 1367; United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

18. Diversity jurisdiction is also conferred over this action pursuant to 28 U.S. Code §

1332. Further, in determining whether the $75,000 amount in controversy requirement has been

met and the Plaintiff and Defendant are citizens of different states.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant's

contacts are sufficient to subject it to personal jurisdiction in this District. Further, Defendant is

found, does business or transacts business within this District.

## PLAINTIFF'S EXPERIENCE

20. Plaintiff is a Consumer who applied and was approved for an extension of credit for

an auto loan in New Mexico on March 3, 2022 to finance a 2008 Dodge Ram 3500.

21. Under federal law 15 USC 1605, Truth in Lending Act, Determination of Finance

Charge, the amount of the finance charge shall be determined of the the sum of ALL charges

payable by the person whose the credit is being extended. Plaintiff's auto loan extension of credit required a cash payment of $1,000 at its inception as a factor of being approved for the loan by Westlake but was not included in the Finance Charge. Westlake should not have required, as a condition of being approved for the loan, a cash payment that was not included in the finance charge.

22.  Defendant was required to execute a finance charge Disclosure at inception of the extension of credit which includes disclosure of the sum of all charges. Plaintiff never received lawful finance charge disclosures that had the sum of all charges from Defendant. Plaintiff was confused on what he was paying for since Westlake just had total amount of payment due and not any breakdown of amounts, interest and/or APR's as well as what the sum of all charges is. There was no calculations or criteria on how Defendant came up with the amount I was to pay for finance charge. The contract signed at the time of the extension of credit does not contain the required disclosures or breakdowns of these amounts.

23.  Defendant required Plaintiff to obtain liability insurance as a factor in receiving the extension of credit but Defendant did not include the premiums in the finance charge or lawful disclosures to Plaintiff that he was required to pay for liability insurance outside of the finance charge. Defendant did not give specific written disclosure to Plaintiff of the cost thereof in the finance charge or that he would be required to pay for this in addition to the finance charge. Defendant did not clearly and conspicuously disclose that Plaintiff was required to pay the premiums for the liability insurance in the contract that was signed at the time of the extension of credit, which is required by law according to the Truth in lending Act 15 U.S. Code § 1605(a)(5) which requires the insurance premiums to be included in the finance charge or lawful disclosures given.

24. Property damage and liability insurance premiums **shall** be included in finance charge only unless Creditor provides a clear and specific statement in writing furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained, 15 U.S. Code § 1605(c). Defendant did not provide required disclosures at inception of extension of credit as this law requires, Defendant did not include the insurance in the finance charge and disclose this to Plaintiff, Defendant required Plaintiff to purchase the insurance in order to get approval for the loan.

25. Under federal law, consumers have a right to rescind certain kinds of loans within a 72 hour period following the contract signing. Defendant was required to provide Plaintiff with a Right of Rescission Disclosure during closing of subject loan and within three days of consummation of loan, appropriate forms for Plaintiff's Rights of Rescission were not provided to Plaintiff prior, during or after the execution of the Extension of Credit given granted Plaintiff by Defendant.

26. The above mentioned Disclosure should have given Plaintiff his rights under the federal law disclosing that he has the right to rescind within three days.

27. Defendant failed, however, to provide Plaintiff with any statutorily required Disclosures to notify him of the finance charge, the Annual Percentage Rate (APR), calculations regarding how Defendant came up with the APR and the Interest rates clearly and conspicuously for Plaintiff to understand prior, during or after the extension of credit transaction.

28. Defendant charged excessive late fees and interest on Plaintiff account. Plaintiff was unaware why he was being charged these amounts because the documents and disclosures given

to him at the conception of the loan did not specify or disclose these fees and rates clearly for the plaintiff to understand with the required information.

29. The disclosures where also not available anywhere on Defendant's website and monthly billing statements, so Plaintiff was uninformed on any charges Westlake was billing him for and unable to determine for himself if they were correct.

30. Plaintiff was very confused and anxious about what he was paying for because the payments for the loan were extremely high and there was always excessive fees and interest being attached on the loan and monthly payments.

31. Had Plaintiff known exactly what was required of him and what he needed to pay as the law requires, he may not have had any late payments and may have had the vehicle paid in full by now.

32. Plaintiff suffered tremendous financial harm because he had to pay for the insurance premiums that Westlake unlawfully required of him to pay but were supposed to be included in the finance charge as the sum of all charges.

33. Defendant has continued every month since the start of the loan to harassed Plaintiff continuously at all times of the day and night by excessive phone calls and emails threatening Plaintiff to pay the amounts due when Plaintiff is confused on what he is actually paying for and has struggled to make the high payments. Defendant has violated the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act by the harassing and excessive phone calls and emails.

34. Defendant has, many times, threatened to take Plaintiff's property and sue plaintiff for default on the loan when Defendant has not sent the proper disclosures of the finance charge causing Plaintiff excessive and severe anxiety and mental anguish regarding the possibility of

loosing his property and the damage this would have on his personal, professional, and credit worthiness reputation.

35.  The intimidation by Defendant has caused Plaintiff to be severely anxious and worried regarding what was going to happen to him and his family if he did not have a vehicle to pick up his children from school and activities or be able to go to work in order to pay for his home and the food for his family. He spent many days worrying about losing his personal property even though he is confused on what he actually owes for the loan because it was never properly disclosed.

36.  Plaintiff paid under duress the payments Defendant alleges are due causing financial struggle and stress on Plaintiff.

37.  Plaintiff sent multiple notices to Defendant advising Defendant that they never sent the disclosures and asking of them to correct their mistakes but Defendant refused to correct their errors, intentionally and knowingly causing significant harm to Plaintiff and violating his rights.

38.  Defendant finally responded to the Consumer Financial Protection Bureau complaint submitted by Plaintiff regarding the matters, but Defendant did not correct their errors or offer any apology for their errors. Defendant only directed Plaintiff to their website for any information which the website is fully deficient in any lawful remedy or information needed.

39.  Defendant's website does not offer any disclosure of the finance charge, the interest rate or APR as well as any other disclosures required which Westlake informed him it had which is false and misleading.

40.  Defendant's should not have been sending Plaintiff to their website to remedy this problem due to the fact that the law requires the disclosures to be provided to Plaintiff in writing at the conception of the extension of credit.

41.  Defendant has continued to threaten Plaintiff's personal property to this day.

42.  This is an action by the Plaintiff, Richard Thomas Thigpen, against Defendant, Westlake, for actual damages, punitive damages and such equitable and declaratory relief as is necessary to enforce the requirements of the Truth in Lending Act (TILA), Fair Debt Collection Practices Act (FDCPA), Telephone Consumer Protection Act, New Mexico Statutes Ch. 57 Article 12 Fair Practices Act, Unjust Enrichment, Breach of Contract and United States of America Constitution, for fraudulent and misleading practices, for lack of disclosure, denying Plaintiff of his rights, and not upholding the loan contract that was consummated by both parties on March 3, 2022.

43.  Plaintiff is also seeking statutory damages regarding the violations to the Consumer laws that were committed against him by Defendant.

## SUPPORTING FACTS

44.  Plaintiff is a natural person, borrower and a consumer according to the Truth in Lending Act and Fair Debt Collection Practices Act.

45.  Defendant is a creditor according to the Truth in Lending Act.

46.  Defendant is a Debt Collector according to the Fair Debt Collection Practices Act.

47.  Plaintiff applied for an Auto Loan (extension of credit) and signed the contract on March 3, 2023.

48.  Defendant required a cash payment outside of the finance charge of $1,000 at closing of the loan as a factor to get approved for the extension of credit.

49.  Defendant did not provide a clear and conspicuous segregated disclosure of the finance charge and is charging Plaintiff in excess of the total finance charge which was not disclosed.

50. Defendant did not disclose to Plaintiff that he needed to pay for the liability insurance as required in the Truth in Lending Act, yet Plaintiff was required to get liability insurance as a factor in getting approved for the extension of credit.

51. Defendant placing auto liability insurance on the vehicle removes Plaintiff's right to select the auto insurance carrier if he is required to pay for the insurance which is a violation of the law.

52. Defendant threatened to place liability insurance on the loan for Plaintiff to pay extra for including charging of more interest if Plaintiff did not maintain liability insurance on the auto for the life of the loan when this was not lawfully disclosed to Plaintiff in the initial documents and disclosures.

53. According to 15 USC 1662, Advertising of downpayment and instalments, prompt or assist directly or indirectly any extension of consumer credit may state: (2) that a specified downpayment is required in connection with any extension of consumer credit, unless the creditor usually and customarily arranges downpayment in that amount.

54. Defendant does not usually customarily arrange the same amount of downpayment when providing extensions of credit.

55. Defendant advertised to Plaintiff indirectly through the dealer that the amount of $1000 downpayment was custom to this transaction and was required as a factor in the extension of credit.

56. Defendant required a downpayment of $1,000 that was a factor in getting approved by defendant. This downpayment was advertised to Plaintiff and Plaintiff understood that if he did not pay the cash payment, the loan would not go through. This down payment is not included in the finance charge but was a cash payment required by Defendant.

57. Defendant willfully and knowingly gave false and misleading statements to Plaintiff stating he was required to pay a downpayment or cash payment that was not disclosed in the finance charge.

58. Defendant willfully and knowingly gave false and misleading information to Plaintiff by not disclosing the sum of all charges in the finance charge and the calculations on how he came up with the finance charge.

59. Defendant willfully and knowingly gave misleading information by not disclosing how they calculated the Annual Percentage Rate or the interest rate and what criteria they used to determine these amounts.

60. Defendant willfully and knowingly gave false and misleading information to Plaintiff by requiring liability insurance as a factor in getting approved for the extension of credit but not including the premiums in the finance charge but requiring Plaintiff to pay extra for the insurance outside of the finance charge.

61. Plaintiff has suffered mental anguish and anxiety by worrying about not being able to pay for the auto loan because he was confused on how much he actually should have paid. Plaintiff spent significant time worrying about his bills and if he would ever be able to pay off his debt like he intended to do when he started this loan.

62. Plaintiff drives a 55 mile commute to work and loosing his vehicle would significantly cause extreme harm to him financially, causing him to worry excessively how he would provide for his family.

63. Plaintiff worries about his credit score and harm that could come to him from default if he was to miss a payment which would be due to lack of having full disclosure and proper breakdowns of what he actually owes as well as the actual finance charges.

64. Plaintiff has worried significantly if he would be able to acquire another loan if he needs to if Defendant repossesses his vehicle. This is known to cause significant harm to credit ratings.

65. Defendant has wilfully and knowingly violated the Truth in Lending Act, enacting 15 USC 1611-Criminal liability for Willful and Knowing Violation.

66. In enacting 15 USC Code 1666 correction of billing error, Westlake did not respond to my notice of billing errors or correct any errors. According to the statute, Plaintiff is not required to pay the billed amounts if the billing errors are ignored.

  (1) Plaintiff requested additional information from the lender about what the finance charge was and the break down of the sum of all charges.

  (2) Plaintiff requested additional information of the reflection of the amounts owed in principle and interest from the billing statement and Defendant never sent any clarification.

  (3) Plaintiff requested information on a computation error of the finance charge and interest rate but the request was ignored by defendant.

67. Defendant did not lawfully disclose the finance charge, the APR, and the interest rate on the initial loan document.

68. Defendant did not explain lawfully how they came up with the APR or interest rate for Plaintiff to understand and did not include in the initial loan documents the calculations on determining the interest rate and/or APR.

69. Defendant did not lawfully disclose to Plaintiff that Plaintiff was required to pay for liability insurance on loan and did not include the liability insurance premiums in the finance charge.

70. Defendant repeatedly called and emailed Plaintiff threatening to take his property if the amounts they tell him he owes are not paid. Defendant refuses to disclose what these amounts are for lawfully.

71. Plaintiff was substantially harmed and damaged by Defendant's improper handling of his loan. Defendant is in violation of the contract that was signed between Defendant and Plaintiff and the above mentioned laws.

## E. THE PRINCIPLE ISSUES ARE:

72. Whether Defendant is a creditor as defined by TILA;

73. Whether Defendant is a lender as defined by TILA;

74. Whether Defendant is a debt collector as defined by FDCPA;

75. Whether Plaintiff is a borrower as defined by TILA, FDCPA, and FCRA;

76. Whether Plaintiff is a consumer as defined by TILA, FDCPA, and FCRA;

77. Whether Defendant's disclosures to Plaintiff provided lawful information clearly and conspicuously for Plaintiff to understand as required by the TILA.

78. Whether Defendant required Plaintiff to pay for insurance outside of the finance charge as a condition for receiving the extension of credit.

79. Whether Defendant gave Plaintiff proper disclosures regarding what is in the finance charge and that he would be required to pay extra for insurance premiums.

80. Whether Defendant called and emailed Plaintiff excessively, harassing him and threatening him to take his personal property, violating the FDCPA.

81. Whether Defendant had lawful amount of time to respond to Plaintiff's notice of error's and request for information and whether Defendant responded within lawful time required;

82. Whether Defendant answered and fully resolved ALL of Plaintiff's disputes;

83. Whether Defendant lawfully investigated Plaintiff's disputes;

84. Whether Defendant profited from fraudulent and deceptive practices against Plaintiff;

85. Whether Defendant's conduct as alleged herein constitutes unfair and deceptive acts or practices within the meaning of the Fair Business Practices Act of New Mexico; and the amount of damages and form of injunctive relief, if any, should be awarded.

## CAUSE OF ACTION

I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations:

## COUNT I: Violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601, et seq:

86. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

87. Plaintiff brings this claim individually against Defendant pursuant to TILA, 15 U.S.C. § 1601, et seq.

88. Defendant is a "creditor" as defined in 15 U.S.C. § 1602(g) that regularly extends credit for consumer credit and requires a finance charge for their extension of credit.

89. Plaintiff is a "natural person" as defined in 15 U.S.C. § 1602(e).

90. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1602(i).

91. The TILA under 15 U.S.C. § 1605(c) the amount of the finance charge shall include the cost of required insurance premiums unless clearly and conspicuously disclosed in writing

furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained.

92. Defendant violated 15 U.S.C. § 1631(a) by failing to provide required disclosures of the finance charge to Plaintiff as required by the TILA, prior to the consumption of the extension of credit.

93. Defendant violated 15 U.S.C. § 1632(a) by failing to provide required disclosures of the annual percentage rate to Plaintiff more clearly and conspicuously than the rest of the disclosures, prior to the consumption of the extension of credit.

94. Defendant violated 15 U.S.C. § 1638(a)(2)(A) by not providing clearly and conspicuously, disclosures of the amount financed, using that term and computed as the law requires, and segregated from the rest of the documents and disclosures.

95. Defendant violated 15 U.S.C. § 1638(a)(2)(A) by not providing in conjunction with the disclosures, the consumer's right to obtain, upon a written request, a written itemization of the amount financed. This disclosure should have included all this law requires. Plaintiff did not receive this disclosure.

96. Defendant violated 15 U.S.C. § 1662 because Defendant advertised to aid, promote, or assist directly or indirectly in the extension of consumer credit and stated that a specified downpayment of $1,000 is required by Plaintiff in connection with the extension of consumer credit and the creditor does not require this same amount for downpayment usually and customarily.

97. Defendant violated 15 U.S.C. § 1638(a)(3) by not providing clearly and conspicuously, disclosures of the finance charge, using that term and and the annual percentage rate, using that term as a finance charge.

98. The said violation was discovered by Plaintiff on or about May 9, 2023.

99. 15 U.S.C. § 1611 sets forth civil liability of $5,000 per violation for willful and knowing violation to the TILA.

100. Based on the foregoing, and pursuant to 15 U.S.C. § 1640, Plaintiff is entitled to actual damages of $25,000 and $12,000 for twice the amount of the finance charge.

## COUNT II: Violation of 15 U.S.C. § 1692, FAIR DEBT COLLECTION PRACTICES ACT et seq:

101. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein;

102. Plaintiff brings this claim individually against Defendant pursuant to 15 U.S.C. § 1692 et seq.;

103. According to 15 U.S.C. § 1692, congressional findings and declaration of purpose, "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." … "is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors"

104. According to 5 U.S.C. § 1692a(6), Defendant is a debt collector because they regularly collect debts owed;

105. According to 15 U.S.C. § 1692a(3), Plaintiff is a "consumer";

106. Defendant violated 15 U.S.C. § 1692b by emailing to a joint email, information about collecting a debt that other persons read.

107. Defendant violated 15 U.S.C. § 1692c by contacting Plaintiff by phone and email without his prior consent. Defendant also harassed Plaintiff by calling multiple times in a row, at inconvenient times and places, intimidating Plaintiff to pay the amount they claim is due or they were going to take his property. Defendant also called Plaintiff at his place of work multiple times causing stress at his workplace and coworkers became aware that defendant was behind on an alleged debt.

108. Defendant violated 15 U.S.C. § 1692d by calling with the intent to harass, oppress, and abuse Plaintiff in connection with the collection of a debt. Defendant used words of intimidation and threats in order to get Plaintiff to pay the alleged amount they claim is due. Defendant caused the telephone to ring repeatedly in order to annoy, abuse, and harass Plaintiff.

109. Defendant violated 15 U.S.C. § 1692e by giving false and misleading information on the amount that was due over the phone.

110. Defendant violated 15 U.S.C. § 1692f(1) by collecting on an amount that was not expressly authorised by the agreement creating the debt or permitted by law.

111. According to 15 U.S.C. § 1692k(2), whoever fails to comply with any provision of this section shall be liable to the consumer for each such failure in the following amounts: actual damages, statutory damages of $1,000 per violation or what the court will allow, cost of the action along with reasonable legal fees.

112. Plaintiff received 48 phone calls and emails regarding the collection of a debt in violation of the FDCPA.

113.  Plaintiff is requesting $48,000 in statutory damages for 48 violations to this law, along with cost of the action and reasonable legal fees.

## COUNT III: TELEPHONE CONSUMER PROTECTION ACT of 1991 (TCPA):

114.  Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

115.  In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

116. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes. Case: 1:12-cv-09289 Document #: 1 Filed: 11/20/12 Page 2 of 9 PageID #:2 3

117. According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognised that wireless customers are charged for incoming calls.

118. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.

119.  Upon information and belief, Defendant employs an ATDS which meets the definition set forth in 47 U.S.C. § 227(a)(1).

120. Beginning in or around March of 2023, Defendant has repeatedly contacted Plaintiff on Plaintiff's cellular telephone using an ATDS.

121. Despite Plaintiff's request that Defendant cease making automated calls to her cellular phone, Defendant continues to place automated calls to Plaintiff.

122. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

123. Defendant did not have prior express consent to place automated calls to Plaintiff on her cellular telephone.

124. Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

125. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone using an ATDS .

126. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

127. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

128. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT IV: BREACH OF CONTRACT:

129. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

130. Plaintiff brings this claim for relief on behalf of himself.

131. Plaintiff entered into a extension of credit contract that typically provides, inter alia, that Defendant may charge a finance charge for the purposes of providing the extension of credit.

132. A breach of contract occurs whenever a party who entered a contract fails to perform their promised obligations.

133. A voidable contract is an agreement between two parties that can be legally canceled by one or both parties under certain conditions.

134. Bad faith refers to dishonesty or fraud in a transaction. Depending on the exact setting, bad faith may mean a dishonest belief or purpose, untrustworthy performance of duties, neglect of fair dealing standards, or a fraudulent intent. It is often related to a breach of the obligation inherent in all contracts to deal with the other parties in good faith and with fair dealing.

135. Defendant breached the contract between them and Plaintiff that was signed for an extension of credit by not providing full and honest disclosure.

136. Further, Defendant breached the loan contract/agreement by charging excessive late fees and interest charges on Plaintiff's loan account that were based on fraudulent practices performed by Defendant.

137. As a result of the breach of contract, Defendant has caused and continues to cause injury to Plaintiff.

138.  Defendant also breached its duty of good faith and fair dealing by assessing fees without full disclosure.

139.  Defendant also breached its duty of good faith and fair dealing by requiring Plaintiff to provide liability insurance for the auto that is financed with the extension of credit and not disclosing this in the finance charge or the contract lawfully.

140.  As a result of the foregoing, Plaintiff is entitled to their actual damages, punitive damages, and an award of their reasonable legal fees and costs.

141.  Further, as a result of Defendant's Breach of Contract, the contract is null and void because of deceptive practices by Defendant, no full disclosure, and voidable due to Defendant not fulfilling their duties in the Contract. Plaintiff is requesting all lenders and third parties associated with security interest in Plaintiff's vehicle, Dodge 2008 Ram 3500, associated with Plaintiff's loan account, names be immediately removed.

142. As a result of the forgoing, Plaintiff is also entitled to inductive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

## COUNT V: UNJUST ENRICHMENT:

143.  Plaintiff repeats, reiterates and alleges each and every allegation set forth in paragraphs numbered above with the same force and effect as set forth herein.

144.  By its wrongful acts and omissions of material facts, Defendant was unjustly enriched at the expense of Plaintiff.

145.  Defendant kept Plaintiff's excessive payments and interest even though Plaintiff's costs were not disclosed lawfully.

146. Further, Defendant was unjustly enriched by Defendant requiring payments to loan account and charging fraudulent late fees and interest on Plaintiff's loan unlawfully since the first payment of the loan.

147. It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from their fraudulent, deceptive and misleading conduct alleged herein.

148. As a result of the foregoing, Plaintiff is entitled to actual damages, punitive damages, and an award of their reasonable legal fees and costs.

149. As a result of the foregoing, Plaintiff is also entitled to injunctive, equitable, and declaratory relief, including an injunction barring Defendant from committing future breaches of its contractual obligations.

## COUNT VI: Violations of New Mexico Statutes, Chapter 57 Article 12 Unfair Practices Act:

150. "The consumer credit industry is one of the largest financial sectors of the U.S. economy and heavily impacts the market place by affecting the general public's ability to obtain goods and services. Misrepresenting consumers' financial indebtedness to others or falsely reporting consumers' credit histories has a potential adverse affect on the consumer marketplace and the economy in general." *1st Nationwide Collection Agency v. Werner*, 288 Ga. App. 457 (2007).

151. Plaintiff repeats and incorporates all of the preceding allegations as if set forth herein.

152. This claim is asserted pursuant to NM Stat § 57-12, *et seq.*

153. Plaintiff is both a consumer and natural person as defined by NM Stat § 57-12-2.

154. Defendant made oral and written statements that were knowingly false and misleading in connection with the sale of the loan in their regular course of business. This false and misleading representation mislead borrower to believe that he was required to obtain insurance when this was not disclosed in the finance charge or clearly in the contract.

155. Defendant also sent a false and misleading letters advising borrower he owed money on the loan without disclosing what these amounts were for or the finance charge.

156. Defendant also sent letters and spoke orally to Plaintiff falsely stating Plaintiff was late on his loan account.

157. Defendant is in violation of NM Stat § 57-12-3 because Defendant misled Plaintiff on how much Plaintiff actually owes on the loan and by not revealing correct fees and interest on the loan account.

158. NM Stat § 57-12-3 declares "Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful.."

159. Defendant violated NM Stat § 57-12-2 by conduct alleged above including, but not limited to, employing the unfair and deceptive acts and practices set forth herein. Defendant's conduct of misrepresenting, concealing, suppressing, or otherwise omitting its actual practices created a likelihood of confusion or of misunderstanding.

160. As a redress for Defendant's repeated and ongoing violations of NM Stat § 57-12-3, Plaintiff is entitled to, inter alia, triple actual damages, equitable and inductive relief and reasonable legal fees, costs, and declaratory relief, pursuant to § 57-12-10.

## JURY TRIAL DEMAND

WHEREFORE, Plaintiff hereby demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the Defendant take affirmative steps to preserve all telephone recordings, data, emails, other recordings, phone records, letters, documents and all other tangible things that relate to the allegations herein, Plaintiff, or the events described herein, any third party associated with any such events, account, sale or file associated with plaintiff, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands the Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgement in favour of Plaintiff against Defendant, as follows:

    a. Certification of this matter to proceed in a civil action;

    b. A declaration that Defendant has committed the violations alleged herein;

    c. That Plaintiff be awarded actual damages, statutory damages, compensatory damages, general, treble, exemplary, and punitive damages as requested herein for the amount of $80,000;

    d. An injunction along with equitable declaratory relief preventing Defendant from engaging in future fraudulent practices as permitted by law or equity;

e. Ordering that loan contract be null and void on its face value, and remove lender and/ or services from all security interest in Plaintiff's vehicle property for Breach of Contact, misleading deceptive practices, and not fulfilling Defendants required duties in the contract;

f. Ordering Defendant release the title to Plaintiff immediately and removing Westlake as a lean-holder on title.

g. That Plaintiff be awarded the expenses of litigation and costs thereof, including reasonable legal fees, research fees, and consultation fees to bring forth this action.

h. That Plaintiff be awarded such additional relief as deemed just and proper.

Respectfully submitted,

By: _____

Signature of Petitioner

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. Sec. 1746. 18 U.S.C. Sec. 1621.

Executed at ___Albuquerque___ on __3-01__ 20_24_
(Location)                          (Date)