## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RICHARD THOMAS THIGPEN

      Plaintiff,

      vs.                       No. 1:24-cv-00214-KWR-SCY

IAN ANDERSON, WESTLAKE
SERVICES, LLC

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SURREPLY AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      THIS MATTER comes before the Court on Defendant Westlake Services, LLC's Motion for Summary Judgment, **doc. 35**, and its associated briefing, and Plaintiff's Motion for Leave to File Sur-Reply. **Doc. 40**. Defendant argues that there are no disputed material facts and that they are entitled to summary judgment as a result. **Doc. 35**. Plaintiff seeks leave to file a surreply on the grounds that Defendant raised new issues in their Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. **Doc. 39** (Reply); **doc. 40** (Motion for Surreply). Having considered the applicable law and parties' briefing, the Court finds that Plaintiff's Motion is **well-taken** and will therefore **GRANT** Plaintiff's Motion for Leave to File Sur-reply. Considering the surreply in addition to the rest of the briefing on the summary judgment motion, the Court also finds that Defendant's Motion is **well-taken** and is therefore **GRANTED**.

### BACKGROUND

      Plaintiff purchased a 2008 Dodge Ram 3500 from Gold Star Motors LLC on March 2, 2022. **Doc. 35 at ¶1**. To facilitate the purchase, Plaintiff signed a Retail Installment Contract and Security Agreement (the "Contract"), which Gold Star Motors LLC immediately assigned to

Defendant Westlake. *Id.* **at ¶2; Doc. 35-1 at 7** (Assignment of contract to Westlake). Under the Contract, Westlake agreed to finance the purchase of the Vehicle in exchange for 48 monthly payments of $438.86. *Id.* **at ¶3**. Plaintiff made timely payments, but eventually defaulted and began receiving bills including late charges and interest accruals. *Id.* **at ¶¶4, 5**. Plaintiff disputes these material facts all or in part. ***See generally* Doc. 38**.

Plaintiff alleges at this point that he began to receive prerecorded voicemails, text messages and automated calls from Defendant without his consent, including from what appeared to be third-party debt collectors High Desert Repossession and NowPay. **Doc. 38 at 4**. He also alleges that Defendant charged him additional amounts not previously disclosed in the contract. *Id.* **at 5**. Plaintiff argues that this is a direct product of Defendant's misrepresentations of the terms of the contract. *Id.* Finally, Plaintiff argues Defendant unilaterally altered the loan schedule. *Id.* **at 6**.

Plaintiff subsequently filed a complaint styled as a civil rights claim under 42 U.S.C. § 1983, though it is unclear why, as Defendant Westlake is not a state actor. **Doc. 1**. However, Plaintiff does not invoke 42 U.S.C. § 1983. Instead, he raised the following claims:

I.   Violation of the Truth in Lending Act (TILA), pursuant to 15 U.S.C. §1601 *et. seq.*;

II.  Violation of the Fair Debt Collection Practices Act (FDCPA), pursuant to 15 U.S.C. § 1692;

III. Violation of the Telephone Consumer Protection Act of 1991 (TCPA), pursuant to 47 U.S.C. § 227(1)(A)(iii);

IV. Breach of Contract;

V.  Unjust Enrichment; and

VI. Violation of the New Mexico Unfair Practices Act, pursuant to NM Stat § 57-12

Plaintiff alleges that the Court retains both federal question and diversity jurisdiction. **Doc. 1 at 2.** Defendant has now moved for summary judgment. **Doc. 35**.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771–72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

When making this determination, the Court keeps two principles in mind. First, while the Court must draw all "reasonable inferences … in the light most favorable to the non-moving party*," id*. at 1261, that party's "version of the facts must find support in the record," *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Second, the Court's role is not to weigh

the evidence or decide any issues of credibility, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249, 255.

**ANALYSIS**

Plaintiff proceeds *pro se*, which colors the Court's analysis of the sufficiency of his Motion. "If the plaintiff proceeds *pro se,* the court should construe his pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  However, *pro se* parties are expected to follow the same rules as represented parties. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (*quoting Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994)).  Moreover, the district court cannot act as a *pro se* party's advocate or counsel, construing arguments and searching the record for him. *Id.*

There are two Motions properly before the Court: Plaintiff's Motion for Surreply, **doc. 40**, and Defendant's Motion for Summary Judgment.  **Doc. 35**.  Plaintiff seeks surreply to address arguments and assertions that Defendant ostensibly raised for the first time in their Reply.  **Doc. 40**.  The Court will first address Plaintiff's motion for surreply, and then address the federal and state law arguments in Defendant's Motion for Summary Judgment below.

**I.     The Court will grant Plaintiff's Motion for Surreply.**

As a preliminary matter, the Court will grant Plaintiff's Motion for Surreply.  **Doc. 40**.  The filing of a surreply requires leave of the court. D.N.M.LR-Civ. 7.4(b).  Surreplies are "disfavored," *see Mosaic Potash Carlsbad, Inc. v. Intrepid Potash, Inc.*, No. 16-CV-0808 KG-SMV, 2020 WL 1033172, at *1 (D.N.M. Mar. 3, 2020), however, "the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply."  *Green v.*

4

*New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1163 (10th Cir. 1998).  Material includes both new "evidence" and new "legal arguments."  *Green*, 420 F.3d at 1196.

"A reply which merely responds to matters placed in issue by the response, and does not spring upon the opposing party new reasons" to grant the motion in question is entirely proper. *See, e.g.*, *Carter v. Spirit AeroSystems, Inc.*, No. 16-01350-EFM, 2019 WL 3732684, at *12 (D. Kan. Aug. 8, 2019) (internal quotations and alterations omitted).  So, a reply "may properly highlight the deficiencies" in a response "without opening the door to additional pleadings."  *Id.*

Plaintiff argues Defendant raised several new legal and factual issues in their Reply that warrant granting surreply.  **Doc. 40 at 1**.  However, several of the arguments Plaintiff raises are present in the Motion for Summary Judgment, including:

(1) The assertion that monthly billing statements provided all required TILA disclosures, including those allegedly omitted from the Retail Installment Contract.  However, Defendant addresses this directly in the Motion for Summary Judgment: "Contrary to Plaintiff's allegations, the necessary Truth-In-Lending Disclosures are conspicuously displayed on the very first page of the Contract." **Doc. 35 at 4**;

(2) An admission that automated texts and emails were sent but that Plaintiff consented via contract. Defendant's Motion argues that Plaintiff's claim "directly contradicts the written agreement between the parties, wherein Plaintiff explicitly and unambiguously agreed" that Westlake could contact him via automated text or email.  **Doc. 35 at 7**;

(3) A new argument that Plaintiff's unjust enrichment claim is barred by the existence of the contract. Defendant addresses this in the first sentence of their unjust enrichment section: "A valid and enforceable retail installment contract governing the parties' relationship precludes Plaintiff's unjust enrichment claim as a matter of law." **Doc. 35 at 8**;

(4) A new FDCPA defense claiming Westlake is not a debt collector, arguing that Westlake collects debts on its own behalf and therefore is exempt.  The entirety of Section IV.A.2 of the Motion for Summary Judgment addresses this argument.  ***See* Doc. 35 at 5–7** (Section discussing whether "Plaintiff's FDCPA claim fails because Westlake is not a 'debt collector' under the statute.").

(5) A new argument under the UPA and breach of contract claims that Plaintiff identified no "false statement' or "consumer harm," mischaracterizing Plaintiff's evidence and

improperly shifting burdens. ***But see*** **Doc. 35 at 9** ("To survive summary judgment on his UPA claim, Plaintiff must establish four elements: (1) false or misleading statements by Westlake; (2) made knowingly in connection with the retail installment contract; (3) in the regular court of business; and (4) with the potential to deceive.").

Additionally, Plaintiff placed several issues in Defendant's Reply at issue in his own Response. *See Carter*, 2019 WL 3732684, at *12 (A reply that responds to issues raised by a response is proper). These arguments include:

(1) A challenge to Plaintiff's Exhibit A (insurance expiration letter), asserting it is not subject to TILA. Plaintiff placed this at issue himself by attaching it as an exhibit to his Response. **Doc. 38-A**.

(2) A claim that Defendant never required insurance in a matter that would invoke TILA. Plaintiff placed this at issue himself when he argued that "Westlake added improper late fees, insurance charges, and finance-related fees without disclosure or contractual authority." **Doc. 38 at ¶5**.

(3) A new factual assertion that the "ROBOT" designation in Westlake's call longs refers only to form letters and emails not telephone calls. Plaintiff placed this at issue in several places in his Response. **Doc. 38 at 16, 18**. For example, Plaintiff cited to call logs specifically dealing with the "ROBOT" Designation. ***Id.* at 16.**

However, Defendant does raise a legal and factual assertion not clearly present in either the Motion or the Reply. Defendant argues that third-party communications from NowPay and High Desert were internal affiliate actions, not third-party debt collections. **Doc. 39 at 4**. Because some of Plaintiff's arguments rest on the definition of a debt collector and whether Defendant is a debt collector, the Court finds that this newly raised factual assertion is sufficiently serious to warrant Defendant an opportunity to respond. The Court will therefore accept Plaintiff's surreply and consider it alongside the rest of the briefing. **Doc. 40 at 5, Exhibit A.**

## II.    <u>The Court will grant Defendant's Motion for Summary Judgment.</u>

Plaintiff raised both federal and state law claims, alleging jurisdiction over the state law claims through diversity jurisdiction. Defendant's Motion addresses the federal claims first, and the state law claims second. The Court will do the same below.

6

As an initial matter, the Court will take Plaintiff's properly supported additional facts as undisputed. The Court's local rules state that "the response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion." D.N.M.LR-Civ. 56.1(b). Moreover, "the reply must contain a concise statement of those facts set forth in the response which the movant disputes or to which the movant asserts an objection… [a]ll material facts set forth in the response will be deemed undisputed unless specifically controverted." *Id*. Therefore, the Court deems Plaintiff's additional facts to be undisputed to the extent they are supported in the record and Defendant did not respond to them as required under the local rules.

Plaintiff disputes at least in part all of the facts Defendant asserts as undisputed. However, it is important to note that merely asserting that the Defendant is wrong about the facts does not automatically create a genuine dispute of material fact. Plaintiff's "version of the facts must [still] find support in the record," *Thomson*, 584 F.3d at 1312. And Plaintiff's version of the facts contradicts the record in several places, including his own pleadings.

Plaintiff asserts six counts in his Complaint, with sub-violations in some of the Counts. **Doc. 1**. The Court will consider each count in turn, beginning with the federal claims.

### A. *Federal Claims*

Plaintiff brings three federal claims. First, he alleges that Defendant violated several disclosure provisions of TILA. **Doc. 1** (Count I). Next, Plaintiff alleges that Defendant violated several provisions of the FDCPA by attempting to collect on a debt in a harassing or otherwise illegal manner. ***Id.*** (Count II). Finally, Plaintiff alleges that Defendant violated the TCPA by using automated calls to contact Plaintiff without his express consent. ***Id.*** (Count III).

i. <u>Plaintiff's TILA claim is both time-barred and fails as a matter of law.</u>

Defendant makes two arguments against Plaintiff's TILA claim: that it is time barred by the statute of limitations and that the contract between the two parties complies with TILA's disclosure requirements.

First, Defendant is correct that Plaintiff's TILA claim, which contains several sub-violations, is time-barred. TILA provides that "action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation*…." 15 U.S.C. 1640(e) (emphasis added). Plaintiff argues that because he did not discover the TILA violation until May 9, 2023, this 2024 action is within the statute of limitations. However, the undisputed fact remains that the parties signed the contract in March of 2022. **Doc. 1 at ¶20**. According to Plaintiff, this is when the violation occurred, even if he did not discover it until 2023. *Id.* **at ¶98**. Plaintiff's claim therefore falls well outside the one-year statute of limitations based on the undisputed facts within the record.

Nor do special circumstances circumvent the statute of limitations. Plaintiff does not discuss the possibility of a "continuing violation" of TILA, but because he is *pro se* and Defendant discusses it in its motion for summary judgment, the Court will consider that argument. The Tenth Circuit has declined to find a continuing TILA violation to circumvent the statute of limitations where there was a violation of disclosure requirements, as is the case here. *Stevens v. Rock Springs Nat. Bank*, 497 F.2d 307, 309 (10th Cir. 1974); *Heil v. Wells Fargo Bank, N.A.*, 298 F. App'x 703, 707 (10th Cir. 2008). A TILA disclosure violation ends at the time it occurred; there is no "continuing" TILA violation to save Plaintiff from the statute of limitations.

Second, Plaintiff has not demonstrated any situation warranting equitably tolling the statute of limitations. The Tenth Circuit has held that TILA is subject to equitable tolling, which allows

plaintiffs to sue after the statutory period has expired if they have been prevented from doing so due to inequitable circumstances. *Heil*, 298 F. App'x at 706–07. Plaintiff bears the burden of proving that the limitations period should be equitably tolled. *Id.* at 707.

Plaintiff has not met that burden. "[E]quitable tolling is only available when litigants diligently pursue their claims and demonstrate that the failure to timely file was caused by extraordinary circumstances beyond their control." *Id.* (quoting *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (cleaned up)). Plaintiff has alleged no extraordinary circumstances that would justify equitable tolling. Plaintiff offers no basis supported by the record for why he could not have discovered the basis for his TILA claim within the statute of limitations, despite his assertions otherwise. All of Plaintiff's alleged violations of TILA connect back to the March 2022 contract. **Doc. 1 at ¶¶91–96**. And all the alleged violations relate back to the language of the contract and what it allegedly failed to disclose or include. *Id.* Given that Plaintiff had the contract in his possession beginning March 2022, and he alleges no interference with his ability to read that contract, the Court finds no reason to toll the statute of limitations. Discovering the alleged violation was within Plaintiff's control from the day he signed the contract.

Moreover, even if Plaintiff's claims were not time-barred, they are without merit. Plaintiff argues that Defendant violated several provisions of TILA by failing to clearly disclose the annual percentage rate, the amount financed, and the specific finance charge. **Doc. 38 at ¶¶92–97**. TILA requires that the annual percentage rate, amount financed, and specific finance charge be "clearly and conspicuously disclosed." 15 U.S.C. § 1638(a); 15 U.S.C. § 1632(a). This includes setting each term off "more conspicuously than other terms, data, or information provided in connection with a transaction, except information relating to the identity of the creditor." 15 U.S.C. § 1632(a).

However, the contract does precisely that. On the first page, in clearly delineated boxes with bolded titles, Defendant laid out the finance charge, the amount financed, and the annual percentage rate. **Doc. 35-1 at 2**. What is more is that all of those disclosures are enclosed in a clearly labeled "Truth-in-Lending Disclosure" box. ***Id.*** The undisputed material facts demonstrate that Defendant clearly complied with its disclosure requirements.

Plaintiff also argues that Defendant violated 15 U.S.C. § 1638(a)(2)(A) by not providing in conjunction with the disclosures the consumer's right to obtain, upon a written request, a written itemization of the amount financed. **Doc. 1 at ¶95**. § 1638(a)(2)(A) discusses the required disclosure of "the amount financed," whereas § 1638(a)(2)(B) provides that a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed." 15 U.S.C. § 1638(a)(2)(B). Because Plaintiff is *pro se*, the Court will construe this allegation as arising under § 1638(a)(2)(B).

However, 12 C.F.R. Part 226, Supp. I, § 226.18(c)(1) specifically allows creditors to provide an itemization as a matter of course, without notifying the consumer of the right to receive it. *Green v. Levis Motors, Inc.*, 179 F.3d 286, 289, n.1 (5th Cir. 1999) (citing 12 C.F.R. § 226.18); *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997) ("But the creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked for it."). That is precisely what Defendant did on page two of the contract. **Doc. 35-1 at 3** ("Itemization of Amount Financed"). Because Defendant provided the itemized list automatically, it was not required to disclose that Plaintiff has a right to obtain a written itemization of the amount financed.

Next, Plaintiff argues that Defendant violated 15 U.S.C. §1605(c) because it failed to include "cost of required insurance premiums" as a "finance charge." **Doc. 1 at ¶91**. § 1605(c)

requires that charges for insurance must be included in the finance charge "*unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended*, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended *may choose the person through which the insurance is to be obtained*."  15 U.S.C. § 1605(c) (emphasis added).  The Contract expressly requires that Plaintiff carry collision insurance on the vehicle for the duration of the Contract and specifies the deductible he must carry.  **Doc. 35-1 at 4** ("You must insure the Property.").  The contract then offers Plaintiff a choice of insurance providers.  ***Id.*** ("You *may* purchase or provide the insurance through any insurance company reasonably acceptable to [Defendant]." (emphasis added)).  Federal regulations on TILA and other federal district courts have clarified that "premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property[,] may be excluded from the finance charge if the insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed." *Zamora v. Bridgecrest Credit Co., LLC*, No. 24-CV-236 TWR (DEB), 2024 WL 4094281, at *7 (S.D. Cal. Sept. 5, 2024) (citing *Pickett v. All In Credit Union*, No. 22-cv-75, 2022 WL 18276701, at *4 (S.D. Ala. Dec. 13, 2022) (citing 12 C.F.R. § 226.4(d)(2)), *report and recommendation adopted*, 2023 WL 173620 (S.D. Ala. Jan. 12, 2023) and 12 C.F.R. § 1026.4(d)(2)). That is precisely what Defendant did in the clearly and boldly labeled "Insurance Disclosures" section.  **Doc. 35-1 at 4** (Insurance Disclosures section).  Defendant offered Plaintiff a choice of who he wanted to insure his vehicle, obviating the need for insurance premiums in the finance charge.

Finally, Plaintiff argues that Defendant violated 15 U.S.C. § 1662 because it "advertised to aid, promote, or assist directly or indirectly in the extension of consumer credit and stated that a specified down payment of $1,000 is required by Plaintiff in connection with the extension of

consumer credit and the creditor does not require this same amount for down payment usually and customarily." **Doc. 1 at ¶96**.  However, this provision of TILA relates to advertising practices. *See* 15 U.S.C. § 1662 ("*No advertisement* to aid, promote, or assist directly or indirectly any extension of consumer credit may state . . . that a specified downpayment is required in connection with any extension of consumer credit, unless the creditor usually and customarily arranges downpayments in that amount." (emphasis added)).  There is no evidence in the record that Defendant advertised the vehicle that Plaintiff purchased or was involved in that transaction prior to receiving the debt via assignment.  Plaintiff's assertions that the dealer does not customarily charge down payments, or that Defendant somehow was involved in the calculation of that downpayment is wholly conjectural and without evidentiary support.  *York*, 95 F.3d at 955. Plaintiff "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed" and fails to do so.  *Branson*, 853 F.2d at 771–72 (quotation marks and citations omitted).

The Court will therefore grant summary judgment as to Count I and Plaintiff's alleged sub-violations of TILA.

ii.  <u>Plaintiff's FDCPA claim fails because Defendant is not a debt collector.</u>

Plaintiff's Federal Debt Collection Practices Act (FDCPA) claim similarly fails. Defendant is not a debt collector as defined by the statute.

"Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."  *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).  A *prima facie* case for violation of the FDCPA requires proof of the following four elements:

(1) the plaintiff is any natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of the statute;

12

(2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes;

(3) the defendant collecting the debt is a "debt collector"; and

(4) the defendant has violated, by act or omission, a provision of the FDCPA.

15 U.S.C. § 1692; *Duncan v. Citibank (S.D.), N.A.*, 2006 WL 4063023, at *5 (D.N.M.) (quoting 29 CAUSES OF ACTION 2d 1 § 49 (2005)); *Cordova v. Jenkins*, No. CV 16-460 KG/KBM, 2018 WL 5112907, at *5 (D.N.M. Oct. 19, 2018).

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013)(citing 15 U.S.C. § 1692a(6)).  In other words, "third party debt collection agents generally qualify as debt collectors under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not."  *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017) (internal quotations omitted). Specifically excluded from the definition of "debt collector" is "any person collecting or attempting to collect any debt. . . which was not in default at the time it was obtained by such person." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1187 (10th Cir. 2013) (citing 15 U.S.C. § 1692a(6)(F)).

Plaintiff argues that Defendant violated several provisions of the FDCPA.  **Doc. 1 at ¶¶106–112.** At least two other federal district courts have already concluded that Westlake does not generally act as a debt collector under the statute when it attempts to collect debts for itself. *See Collins v. Westlake Fin. Servs.*, No. SA-25-CV-00021-JKP, 2025 WL 756205, at *3 (W.D. Tex. Mar. 10, 2025) ("Westlake is not a debt collector as defined by the statute."); *see also Louis-Jean v. Westlake Fin. Servs.*, No. 22-CV-05702, 2024 WL 3904575, at *2 (D.N.J. Aug. 22, 2024)

("[T]he FDCPA does not apply to Westlake because Westlake is not a 'debt collector'").  The Court reaches the same conclusion here.

First, Defendant attempted to collect a debt on its own behalf when it contacted Plaintiff about repossessing the vehicle or seeking payment.  When Gold Star Motors, LLC assigned the contract to Defendant the day Plaintiff signed it, Defendant owned the debt and could thus collect for itself.  *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017) ("And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—*not on a debt owner seeking to collect debts for itself*. (emphasis added)); ***See* Doc. 35-1 at 7** (Assignment of contract to Westlake).  Any collection activity by Defendant was to collect money Plaintiff owed Defendant, not money Plaintiff owed "another." 15 U.S.C. § 1692(a)(6).

Moreover, the debt was not in default at the time Defendant acquired the contract, and both parties' documents demonstrate as much.  ***See* Doc. 35-1 at 7** (Assignment of contract to Westlake); *see id.* **at 13 – 14** (payment schedule demonstrating that Plaintiff was not initially late on his payments).  The FDCPA specifically excludes "any person collecting or attempting to collect any debt. . . which was not in default at the time it was obtained by such person." *Llewellyn*, 711 F.3d at 1187 (citing 15 U.S.C. § 1692a(6)(F)).  This exempts Defendant, who obtained the debt from Gold Star Motors, LLC, on March 2, 2022. **Doc. 35-1 at 2**.  Plaintiff was not in default until May 15, 2022. *Id.* **at 13–14.**

However, Plaintiff raises additional issues around Defendant's relationship to High Desert Repossession and NowPay.  Plaintiff alleges that these are third-party debt collectors whom Westlake hired to illegally collect a debt from him. **Doc. 38 at 13**.  However, the Court finds Plaintiff's attempt to turn Defendant into a debt collector to be without merit.

As a preliminary matter, the Court finds that the allegation that Defendant hired Jack Hill with High Desert Repossession to collect on the loan to be wholly without merit.  Plaintiff alleges that he "received a phone call and a text message from (505) 506-0600, stating: 'Contact Jack Hill 505-506-0600 regarding 08 Dodge Ram PU, Westlake Services today, avoid repossession." **Doc. 38 at 13**.  He cites to the call log (**Doc. 38-B**) and what he alleges to be a text and call from High Desert Possession (**Doc. 38-H**).  However, the call log does not show any contact to Plaintiff from that number, and Exhibit H is completely unreadable.  The Court cannot discern any sort of meaning from the scans, rendering Plaintiff's claim about High Desert Repossession without evidentiary support and thus conclusory.  *See York*, 95 F.3d at 955 (Conjecture will not survive summary judgment); *Branson*, 853 F.2d at 771–72 (To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed.").

Plaintiff argues that Defendant should still be considered a debt collector because it falsely uses different names to attempt to collect debts—High Desert Repossession and Nowpay.  **Doc. 38 at 12.**  Plaintiff appears to couch his argument in a practice known as "flat-rating," which is prohibited by the FDCPA.  ***See id***. **at 12 – 13** (citing caselaw discussing flat-rating).  Flat-rating involves third-party debt collectors selling their namesake (usually letterhead) for a flat rate to the debt owner so that the debt owner can use the third party's name to collect their own debt.   15 U.S.C.A. § 1692j(a) ("It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.").  In citing case law

discussing flat-rating, it appears Plaintiff means to invoke this as an argument. *See Riddle*, 83 F.3d at 1202 (Courts must construe *pro se* plaintiffs' proceedings liberally).

However, flat-rating only occurs where the third party is not meaningfully involved in the process of debt collection, meaning a debt owner only illegally uses a third party's name where the third party does not participate. *Nielsen v. Dickerson*, 307 F.3d 623, 634 (7th Cir. 2002) (Treating a debt owner as a debt collector where it used a third party's letterhead because that third party was not "genuinely involved in the effort to collect. . . ."); *Echlin v. PeaceHealth*, 887 F.3d 967, 973 (9th Cir. 2018) (endorsing the Seventh Circuit's suggestion that § 1692j "bars the practice ... in which an individual sends a delinquency letter to the debtor portraying himself as a debt collector, when in fact he has no real involvement in the debt collection effort.").

Even if Nowpay is a third-party entity, they appear to be meaningfully involved in the debt collection process. **Doc. 38-B** (call log). There is no evidence that Nowpay merely furnished its name to Defendant for Defendant to collect its rightly owned debt. Rather, Nowpay is listed on Defendant's call logs, suggesting more than merely furnishing letterhead or its name. **Doc. 38-B**; *Nielsen*, 307 F.3d at 634 (requiring genuine involvement, not merely furnishing a form). Plaintiff's "version of the facts must [still] find support in the record," *Thomson*, 584 F.3d at 1312, and Plaintiff's assertion that Defendant used prohibited flat-rating practices does not find support in the record, and thus does not change the Court's finding that Defendant does not act as a debt collector within the meaning of the statute.

Finally, Plaintiff relies on a supposed "self-admission" that they are a debt collector, not merely a creditor or debt owner, to avoid summary judgment. He relies on Defendant's Fair Debt Collection Practices Act disclosure on his bills, which reads:

> **Fair Debt Collection Practices Act Disclosure**: If your account *is currently in default*, this is an attempt to collect a debt and any information obtained will be

used for that purpose. However, if you have received a discharge and the account was not reaffirmed ln the bankruptcy case, we will only exercise our right as against the property and are not attempting to collect the discharged debt from you personally.

**Doc. 38-G**.

Plaintiff's own evidence contradicts his assertion.  A party who acquires a debt only acts as a debt collector under the FDCPA if the debt was in default at the time they acquired it. *Llewellyn*, 711 F.3d at 1187 (citing 15 U.S.C. § 1692a(6)(F)). But Plaintiff's account was neither in default at the time of the billing statement he attaches, **doc. 38-G** (Billing statement showing his account was not in default, that he owed no late fees, and that Defendant sought to collect the agreed upon amount of $438.86), nor at the time Defendant acquired the debt. **Doc. 38-D** (assignment to Westlake).  Even if Defendant were seeking to collect a debt, it would be doing so on its own behalf.

Moreover, using the language "collect a debt" does not somehow magically turn Defendant into a debt collector under the statute.  It is true that the failure to disclose in writing that a debt collector is attempting to collect a debt constitutes a violation of the FDCPA.  15 U.S.C. § 1692e(11).  However, several circuit courts have recognized that that this kind of boilerplate language does not automatically trigger the FDCPA, nor does an absence of the language.  *See e.g.*, *Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1114 (8th Cir. 2021) ("[T]hese types of boilerplate mini[]Miranda disclosures . . . "do[ ] not automatically trigger the protections of the FDCPA, just as the absence of such [disclosures] does not have dispositive significance.""); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010) ("The letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA"); *Lewis v. ACB Bus. Servs., Inc*., 135 F.3d 389, 399-400 (6th Cir. 1998) (same).  Given the overwhelming evidence that Defendant sought to collect a debt on its own

behalf, this boilerplate language, not even relevant in the evidence Plaintiff submits, is insufficient to turn Defendant into a debt collector under the statute.

The Court finds summary judgment appropriate for Defendant because Defendant is not a debt collector within the meaning of the statute.

iii.   <u>Plaintiff's TCPA claim fails because Plaintiff expressly consented to being contacted by automatic callers.</u>

Finally, Plaintiff's TCPA claim fails because Plaintiff consented to Westlake's use of robotic calls and automatic dialing systems.

Plaintiff alleges that Defendant violated the TCPA because it used an artificial or prerecorded voice to call his cellular phone.  **Doc. 1 at ¶116**.  The parties disagree as to whether Defendant used an automatic dialer to contact Plaintiff.  However, whether Defendant used an automatic dialer that would implicate the TCPA is irrelevant, and the Court need not make a determination on what precisely Defendant uses to contact the parties with whom it contracts.  As noted in Plaintiff's own words, this prohibition has an exception: where a party expressly consents to contact from artificial voices or automatic dialing systems.  ***Id.***; 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice.") (emphasis added); *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 (2021) (same).

The undisputed material facts demonstrate that Plaintiff consented to be contacted with artificial or prerecorded voices when he signed the original Contract.  Under the clearly labeled heading "Telephone Monitoring and Calling," Plaintiff agreed that "[Defendant] may from time to time make calls or texts to [Plaintiff] using prerecorded/artificial voice messages or through the

use of an automatic dialing device at any telephone number [Plaintiff] provides to [Defendant] in connection with [Plaintiff's] account, including a mobile telephone number. . . ." **Doc. 35-1 at 5** (Contract). Indeed, Plaintiff attaches that language in his own filings. ***See* Doc. 38-D at 4**. Despite Plaintiff's arguments otherwise, Plaintiff expressly consented to calls from artificial or prerecorded voices or the use of an automatic dialing system. *See* 47 U.S.C. § 227(b)(1)(A); *Silver v. City of Albuquerque*, No. 1:22-CV-00400 MIS/GBW, 2023 WL 2413780, at *3 (D.N.M. Mar. 8, 2023), *aff'd*, No. 23-2058, 2025 WL 1173558 (10th Cir. Apr. 23, 2025) (TCPA liability attaches only "in the absence of a recipient's express written consent"). Plaintiff's own exhibits condemn his TCPA claim—his consent places him outside the protection of the TPCA.

Plaintiff's TCPA claim is thus without merit and the Court will grant summary judgment for Defendant on Count III.

### B. *State law claims.*

Plaintiff also raises three state law claims: breach of contract, unjust enrichment, and a violation of the New Mexico Unfair Practices Act. Plaintiff invokes diversity jurisdiction for his state law claims, and the Court finds that he has made such a showing. **Doc. 1 at ¶18**. "In cases arising under diversity jurisdiction, the federal court's task ... simply to 'ascertain and apply the state law.'" *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). The Court must follow the most recent decisions from the state's highest court, but where no controlling state decision exists, the Court "must attempt to predict what the state's highest court would do." *Id.* In doing so, the Court may "seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law

of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* at 665–66 (internal quotations and citations omitted).

   i. <u>Plaintiff cannot support a breach of contract claim.</u>

  First, Plaintiff's breach of contract claim is vague and without merit. Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Young v. Hartford Cas. Ins. Co.*, 503 F. Supp. 3d 1125, 1179 (D.N.M. 2020). At no point in the litigation process has Plaintiff pointed to the specific provision Defendant allegedly breached.

  First, Plaintiff argues that Defendant charged unauthorized fees, including late fees, not authorized by the contract. To support this, he attaches the payment schedule, which Defendant also attaches. However, Plaintiff's argument falls apart on the first page of his contract.

  According to the Contract, Plaintiff owed forty-eight monthly payments of $438.86 beginning on April 4, 2022. **Doc. 35-1 at 2.** In the Truth-In-Lending Disclosure, it clearly states that Defendant will charge "the lesser of 5% of the unpaid amount of the payment due or $15.00." *Id*. The contract also states that Plaintiff agreed to pay finance charges accruing on the unpaid balance at the rate of 10.99% per year. ***Id.* at 3**.

  Both parties attach the payment schedule. Plaintiff appears to object to the late fees and the interest fees, which began on May 15, 2022, and May 21, 2022 respectively. However, the contract explicitly authorizes these charges in their quantities. **Doc. 35-1 at 2–3.** There is no genuine dispute of material facts as to the validity of the interest fees or late fees, and Plaintiff thus has not established breach.

  Second, Plaintiff argues that Defendant breached the contract by failing to properly disclose finance charges and insurance requirements in violation of TILA. A TILA violation is a

separate claim, addressed and dismissed above.  Moreover, the contract clearly includes its method of charging Plaintiff and its requirement that Plaintiff carry insurance on the vehicle.  ***See*** **Doc. 35-1 at 2, 5**.

Third, the payment schedule demonstrates that Defendant did not unilaterally modify the payment schedule or interest accrual, despite what Plaintiff argues.  ***See*** **Doc. 35-1 at 13–14.**  To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson*., 853 F.2d at 771-72 (quotation marks and citations omitted).  Plaintiff offers no specific facts showing that the payment schedule or dates in which interest accrued or late fees were charged deviated from the Contract.  There is "an absence of evidence to support [Plaintiff's] case." *Gutierrez v. Bean*, No. CV 04-290 WJ/WDS, 2006 WL 8443176, at *2 (D.N.M. Dec. 18, 2006) (citing *Celotex Corp.* 477 U.S. at 322-23).  This argument likewise fails.

Fourth, Plaintiff repeatedly argues that Defendant breached the contract by demanding that Plaintiff obtain collision insurance by letter and phone call.  Plaintiff alleges that the contract did not state this insurance was mandatory. However, the contract that both parties have attached to their pleadings expressly requires Plaintiff to carry collision insurance on the vehicle for the duration of the Contract.  **Doc. 35-1 at 4** ("You must insure the Property.").  Pursuant to the contract, Plaintiff was merely offered a choice regarding insurance providers, not the choice to insure the vehicle.  *Id.* ("You may purchase or provide the insurance through any insurance company reasonably acceptable to [Defendant].").  Demanding that Plaintiff renew his insurance is not a breach of the terms of the contract.

Fifth, Plaintiff argues that Defendant breached the contract by "[e]ngaging in frequent robocalls, texts, and automated communications, where the contract's vague 'from time to time'

language fails to provide the express consent required for such contact." **Doc. 38 at 20.** As discussed under Plaintiff's TCPA claim, there was a clearly labeled heading "Telephone Monitoring and Calling," in which Plaintiff agreed that "[Defendant] may from time to time make calls or texts to [Plaintiff] using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number [Plaintiff] provides to [Defendant] in connection with [Plaintiff's] account, including a mobile telephone number. . . ." **Doc. 35-1 at 5** (Contract); **Doc. 38-D at 4**. This claim likewise does not constitute breach.

Sixth, Plaintiff takes issue with Defendant's alleged choice to threaten litigation, "despite the contract identifying specific vehicle repossession procedures as the exclusive remedy for default." **Doc. 38 at 20**. Plaintiff has not demonstrated that any of these threats of litigation took place; the only concrete communication Plaintiff offers regarding the topic is Exhibit A, the Insurance Demand Letter. **Doc. 38-A**. However, that letter does not threaten litigation—it merely warns that Plaintiff will be in default if he fails to renew his insurance, and that he may owe the balance of his loan. *Id.* These are terms expressly laid out in the contract. *See* **Doc. 35-1 at 4** ("You must insure the Property."); *id.* (You will be in default on this Contract if . . . You fail to perform any obligation that you have undertaken in this Contract."). Moreover, even if these threats of litigation did occur, litigation to regain the property is a remedy clearly laid out in the Contract. *Id.* ("We may immediately take possession of the Property *by legal process*. . . . (emphasis added)). The undisputed facts demonstrate that this allegation is also not a breach.

Because the undisputed material facts demonstrate that Defendant has not breached the contract between the two parties, the Court will grant summary judgment on this count.

ii.  State law precludes Plaintiff's unjust enrichment claim.

In New Mexico, a plaintiff may prevail on an unjust enrichment claim by showing that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co., Inc. v. Sanchez*, 129 N.M. 200, 203 (Ct. App. 2000) (citing RESTATEMENT (FIRST) OF RESTITUTION §§ 1, 40, 41 (1988)). "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Ontiveros Insulation Co. v. Sanchez,* 2000–NMCA–051, ¶ 11. *See Credit Inst. v. Veterinary Nutrition Corp.,* 2003–NMCA–010, ¶ 21 62 P.3d 339, 344; *Hydro Conduit Corp. v. Kemble,* 1990–NMSC–061, 110 N.M. 173, 175, 793 P.2d 855, 857.

However, a party cannot pursue an unjust enrichment claim where there exists a live contract claim unless something precludes the plaintiff from pursuing the contract claim.  *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005)("Indisputably, there are contracts between the parties, thus any claim for underpayment of royalties, including a claim for unjust enrichment, must begin with those contracts."); *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997) ("[T]he hornbook rule that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue."); *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1285 (D.N.M. 2014) ("The Court thinks the better approach, one that reflects the Tenth Circuit's interpretation of New Mexico law [in *Elliott Industries*] and cases from the Supreme Court of New Mexico, is to require the plaintiff to make some showing as to why the contract claim is not viable."); *Acevedo v. Sw. Airlines Co.*, No. CV 16-24 MV/LF, 2018 WL 2392215, at *12 (D.N.M. May 25, 2018) ("Accordingly, where there is a contractual

23

relationship between the parties, claims for unjust enrichment or quantum meruit are barred."). There is a valid and enforceable retail installment contract governing the parties' relationship. **Doc. 35-1** (Contract). New Mexico law and the Tenth Circuit's interpretation of it precludes Plaintiff's unjust enrichment claim, even in the alternative.

Moreover, even if Plaintiff's claim were allowed, it would fail because Plaintiff does not provide evidence of unjust enrichment. As Defendant points out, there is no specific evidence that Defendant was unjustly enriched. *Celotex Corp. v Catrett*, 477 U.S. 317, 322-23 (1986) (When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case.). Plaintiff argues that Defendant:

(1) Collected fees and charges exceeding contractual terms;

(2) Unilaterally extended the loan term without proper notice;

(3) Benefitted financially from those unauthorized changes; and

(4) Imposed additional insurance obligations not clearly disclosed in the agreement.

**Doc. 38 at 23**.

However, Plaintiff presents no evidence that Defendant collected any amounts beyond those authorized by the contract such that they were unjustly enriched. Plaintiff's argument rests on several assertions about the terms of the contract Defendant ostensibly breached but cannot point to specific provisions or terms. *York*, 95 F.3d at 955 ("[M]ere assertions and conjecture are not enough to survive summary judgment."). His only concrete argument is that "[t]he demand for undisclosed insurance and fees into permitted under the contract creates enrichment beyond the agreement's scope." **Doc. 40 at 11**. However, as discussed at length below, the requirement that Plaintiff carry insurance on the vehicle for the term of the loan is clearly spelled out in the

contract. **Doc. 35-1 at 4** ("You must insure the Property."). The undisputed facts demonstrate that Defendant acted within the confines of the contract in moving to collect or repossess based on Plaintiff's failure to carry insurance on the vehicle.

Nor is this the kind of unusual or compelling circumstance warranting relief. *Lopez v. Kase,* 1999–NMSC–011, ¶ 6, 126 N.M. 733, 975 P.2d 346, 348 (stating that the Supreme Court of New Mexico "generally will not grant equitable relief by way of an extraordinary writ when there is an adequate remedy available to the petitioner at law, absent unusual and compelling circumstances"). Plaintiff's cause of action is borne out of a validly executed and standard contract to which he now objects. Failure to properly read a contract is neither extraordinary nor compelling, and the Court will not find that Defendant was unjustly enriched because of it. Summary judgment on this count is appropriate.

### iii.   Plaintiff cannot support a New Mexico Unfair Practices Act claim.

Finally, Plaintiff cannot satisfy the elements of a claim under the New Mexico Unfair Practices Act.

Under the New Mexico Unfair Practices Act ("NMUPA"), "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." *See* NMSA § 57-12-3. To state a claim under the NMUPA, a plaintiff must allege that "(1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007); *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007; *Albuquerque Ambulatory Eye Surgery Ctr. LLC v.*

*Transportation Ins. Co.*, 566 F. Supp. 3d 1178, 1197–98 (D.N.M. 2021).  The term "unfair trade practice" is defined as "any false or misleading oral or written statement. . . knowingly made. . . which tends to or does deceive or mislead any person. . ." NMSA 1978 § 57-12-2(D). In order to support such a claim, evidence must be presented that a party knowingly made a false or misleading statement in connection with the negotiation of the agreement. *Stevenson v. Louis Dreyfus Corp.*, 112 N.M.97, 811 P.2d 1308 (1991).

Defendant argues that Plaintiff has offered no evidence and thus cannot satisfy the four elements of an NMUPA claim.  Plaintiff makes four assertions to counter that argument, but none go beyond speculation or create a dispute of genuine material fact.

First, Plaintiff argues that Defendant misrepresented finance charges and that carrying collision insurance was not actually optional, as he believed.  To support this, he offers a copy of the Contract and Exhibit A, a letter reminding Plaintiff that he must insure the vehicle throughout the term of the contract and that he must name Defendant as a loss payee.  **Doc. 38-D** (Contract); **Doc. 38-A** (insurance demand letter).  Plaintiff argues that the insurance demand letter constitutes a false or misleading statement because the contract he signed did not require insurance.

Plaintiff is incorrect.  The Contract he attaches to his own pleadings expressly requires that he carry collision insurance on the vehicle for the duration of the Contract.  **Doc. 35-1 at 4** ("You must insure the Property.").  What Plaintiff perceived as permissive language regarding his decision to insure the vehicle altogether was actually the contract offering Plaintiff a choice of insurance providers, not the choice to insure the vehicle.  *Id.* ("You may purchase or provide the insurance through any insurance company reasonably acceptable to [Defendant].").  The undisputed facts demonstrate that the insurance demand letter comported with the contract, and Plaintiff has not demonstrated that it is otherwise false or misleading.

26

Next, Plaintiff argues that Defendant's threats to repossess the vehicle were false, "even when repossession was neither authorized nor imminent." **Doc. 38 at 24**. In doing so, Plaintiff refers to Exhibit H, which he asserts is a summary of a voicemail from High Desert Repossession,[1] and Exhibit B, which he asserts are records of calls from "NowPay" referencing repossession. **Doc. 38-H; 38-B**. However, Defendant's supposed statements, which Plaintiff has not clearly demonstrated even occurred, would not be false in light of the terms of the contract. In the contract that Plaintiff provides, the terms clearly state that Defendant "may immediately take possession of the Property by legal process or self-help" if "[Plaintiff is] in default on this Contract" **Doc. 35-1 at 5** (Contract)**; Doc. 38-D at 5** (same). Given that this language is also in the contract, Plaintiff has not demonstrated that these alleged statements were false or misleading.

Finally, Plaintiff makes two statements that are wholly conjectural.[2] First, he argues that Defendant misled Plaintiff into believing that additional payments would improve his financial situation, while Defendant extended loan terms to maximize interest accrual. But Plaintiff points to no evidence or specific statements Defendant made to support this assertion. Similarly, Plaintiff's assertions that Defendant failed to provide clear and accurate disclosures of the total loan cost in understandable terms is conjectural. Plaintiff again provides no evidence, nor points to specifically misleading statements by Defendant.

---

[1] Exhibit H is completely unreadable. It is a screenshot from an iPhone indicating an incoming call from a number Plaintiff asserts is High Desert Repossession. **Doc. 38-H**. However, Plaintiff offers no evidence to support that assertion, and the Court cannot infer anything more from the blurry exhibit other than Plaintiff did receive a call from that number.

[2] Plaintiff points to a Consent Order with the Consumer Financial Protection Bureau suggesting that Defendant has engaged in unfair or deceptive practices in the past. **Doc. 38 at 23**. However, that finding is irrelevant here. A previous finding that Defendant previously engaged in potentially deceptive practices without more does not create a genuine issue of material fact as to this specific conflict. Plaintiff offers no evidence of Defendant's actions that might implicate the NMUPA as it pertains to him, only to a previous incident.

In short, Plaintiff cannot support his NMUPA claim, and resorts to bareboned assertions to save it. *York*, 95 F.3d at 955 ("[M]ere assertions and conjecture are not enough to survive summary judgment." The Court will grant summary judgment for Defendant as to the final count.

## CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Sur-reply (**doc. 40**).  Having evaluated Plaintiff's surreply in addition to the original briefing, the Court finds that Defendant is entitled to summary judgment on claims I through VI.  The Court will therefore **GRANT** Defendant's Motion for Summary Judgment (**doc. 35**).

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE